THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **CLYDE CANNON, SR.** | * | **CIVIL ACTION NO. 04-1908** |
| **Versus** | * | **JUDGE JAMES** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Plaintiff, Clyde Cannon, Sr., ("Mr. Cannon"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

<u>Introduction</u>

At the outset, the undersigned notes that since the filing of this appeal, the court has been notified that Cannon has been now been awarded disability benefits beginning January 28, 2004. (Doc. No. 14) Thus, the only time period at issue for this appeal is July 7, 2001, through January 27, 2004.

Mr. Cannon filed for benefits on September 5, 2002, alleging disability commencing on July 7, 2001, due to degenerative arthritis, mental illness, interstitial cystitis, and high blood pressure. (Tr. 49-51, 57, 445-448). Following denial of his claim, a hearing was held on September 26,

2003, before Administrative Law Judge ("ALJ"), Charles Lindsay. (Tr. 35-41, 461-497). ALJ Lindsay issued an unfavorable decision on January 27, 2004.

The ALJ noted that Plaintiff was a man of 57[1] years of age, who had the equivalence of a high school education and past relevant work as a carpenter and a supervisor at a nuclear plant (Tr. 13). After reviewing the medical evidence (Tr. 14-16), the ALJ determined that Plaintiff had hypertension, interstitial cystitis, degenerative arthritis, gastroesophageal reflux disease, prostatism, sleep apnea, bilateral hearing loss with tinnitus, and dysthymia, which were considered to be medically "severe" impairments (Tr. 16). *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); 20 C.F.R. §§ 404.1521, 416.921 (2004); Social Security Ruling (SSR) 85-28. However, the ALJ found that Plaintiff did not have any impairment, or combination of impairments, which met or medically equaled any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 16).

The ALJ evaluated Plaintiff's subjective complaints of pain and determined that they were not completely credible (Tr. 17-18). After reviewing the medical and non-medical evidence of record, the ALJ assessed Plaintiff with a residual functional capacity for a modified range of medium work (Tr. 18). The ALJ concluded, based on the testimony of the vocational expert, that Plaintiff's residual functional capacity did not allow him to return to his past relevant work (Tr. 18-19).

Again relying on the vocational expert's testimony, the ALJ found that Plaintiff was able to return to other work existing in significant numbers in the national economy (Tr. 20).

---

[1] The record shows that Mr. Cannon was born on March 18, 1944, and was therefore almost 60 years old when the January 27, 2004 decision was rendered. However, he would be considered of advanced age for purposes of disability assessment at either age.

Specifically, the ALJ concluded that Mr. Cannon retains the residual functional capacity ("RFC") to perform "a significant range of medium work," reduced by numerous "moderate" limitations and inability to work in loud environments, which allows for work as a wall cleaner and floor waxer. (Tr. 18, 20, 21). Accordingly, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act and the Commissioner's regulations, and denied his claims for disability insurance benefits and supplemental security income (Tr. 20).

Mr. Cannon's request for review with the Appeals Council was denied on July 21, 2004. (Tr. 7, 23-26, 450-460). Accordingly, the ALJ's decision became the Commissioner's final decision. Plaintiff timely filed the instant civil action and this matter is now properly before the Court for its review. *See* 42 U.S.C. § 405(g).

Standard of Review; Substantial Evidence

The Commissioner's final decision must be affirmed if substantial evidence supports the Commissioner's decision and that decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). "The court does not re-weigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's

decision." *Carey*, 230 F.3d at 135, *citing Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe

> enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner bears the burden of proving that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

<u>Analysis</u>

Cannon argues that the ALJ erred in the following respects:

1. The ALJ's credibility finding is not based on substantial evidence;

2. The ALJ failed to obtain an updated opinion by a medical advisor after receipt of additional medical records;

3. The ALJ failed to mention or analyze the fact that the Veteran's Administration found Cannon to be totally disabled; and

4. The Appeals Council erred in not finding that new evidence from Dr. Harbour, Cannon's treating physician at the VA clinic, provided a basis for changing the ALJ's decision.

1. Credibility Finding

The Commissioner argues that the ALJ satisfied his requirement of making affirmative findings regarding Plaintiff's subjective complaints by expressly rejecting Plaintiff's allegations of disabling limitations (Tr. 17-18). *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The Commissioner points out that Mr. Cannon reported in writing that he was able to care for all of his personal needs without assistance and that he had a valid driver's license and could drive a car (Tr. 79, 81). Although he reported in writing that he never cooked or did any housework (Tr. 79-80), he testified at the hearing that he did some housework when his wife was away at work and that he was able to prepare simple meals for himself (Tr. 471).

Mr. Cannon argues that what is at issue is whether these "affirmative findings" are supported by substantial evidence, arguing that the ALJ's finding regarding Mr. Cannon's daily activities as well as regarding the medical evidence lack support in the record.

Mr. Cannon points to the following portions of the record as setting out the factual background for this matter.

**1. Plaintiff's age, education, and work experience**. The Plaintiff, Clyde Cannon, was born on March 18, 1944. (Tr. 49, 446). Mr. Cannon only completed the ninth grade, but then obtained a GED. He has not been gainfully employed since the alleged onset of disability, but has received a VA pension of $61 per month since at least May of 2003. (Tr. 49, 63, 90, 466, 467). He worked as a construction supervisor at a nuclear plant from 1991 - 2001; as a construction carpenter from 1985 - 1991; and as an offshore construction/fitter from 1980 to 1985. (Tr. 70-73).

6

**2. Medical evidence**. Medical evidence dated at the time of Mr. Cannon's onset of disability, July 2001, shows that when he was initially evaluated at the Veterans Administration Medical Center ("VAMC"), he had discontinued his medication for treatment of interstitial cystitis because it had made him depressed and irritable resulting in anger outbursts. (Tr. 167). Mr. Cannon described his cystitis-related pain as starting in his left leg and proceeding to fever and chills with aching all over. *Id.* He also reported bouts of diarrhea, intermittent with constipation, lasting two or three days at a time; insomnia related to stress on his job; depression, frustration, and anger described as "frightening" by his wife. (Tr. 168). Mr. Cannon's diagnoses were listed as hypertension, interstitial cystitis, sigmoid and rectal polyp removal, depression, GERD, history of Asbestos exposure, life long history of Bradycardia, history of renal calculi, extreme anxiety/anger/insomnia, atypical chest pain, osteoarthritis, and dyspepsia. (Tr. 168, 224, 306, *See also* Tr. 171, 292, 300). His medications were listed as Atenolol, Norvasc, Prevacid, Tagament, and Motrin. (Tr. 168).

> A VAMC psychiatry consult note dated October 2001 states:
>
> Pt. has trouble staying asleep during the night. He has shooting pain in his arms and legs, sometimes so severe that "it feels like the bones in your feet are poking out." He also has fevers during the night, including sweating "as if someone poured a bucket of water on my head." The lack of sleep leads to his being tired and irritable throughout the day. Pt. says that sometimes he is so tired "that I can't even get dressed." He has been unable to work since May due to EDS (excessive daytime sleepiness).

(Tr. 158). Mr. Cannon's persistent mental problems are documented as follows in VAMC records which document that he was depressed, frustrated, anxious, short tempered, irritable, very angry, upset, suicidal, frustrated, unhappy, and had episodes of rage when aggravated, significant suspiciousness of others, insomnia, sleep disturbance, frequent crying spells,

7

anhedonia, difficulty concentrating, feelings of hopelessness, worthlessness, memory loss, forgetfulness, and a flat affect. He was diagnosed with Major Depression, Generalized Anxiety Disorder and Dysthymia. (Tr. 107, 109, 124, 127, 136, 147, 158, 160, 161, 136, 311, 320, 327, 329, 332, 341, 342, 347, 349, 363, 365, 382, 396, 397). Additionally, in December 2002, he tried to harm himself on two occasions, had an "explosive nature," memory problems, tearfulness; some tangentiality of his thought processes, increased speech rate and rhythm, depressed mood, angry affect, anxiety, insomnia, and unsound judgment. He was diagnosed with Major Depressive Disorder NOS, Generalized Anxiety, Bereavement, Partner Relational Problems, and Intermittent Explosive Disorder. He refused hospitalization, and was assessed a GAF of 31 (with 51 in the past year); and was "not considered competent to manage financial matters in his own best interest." (Tr. 354, 356, 358, 359 442-444).

Concerning Mr. Cannon's physical problems, the VAMC records verify findings of the following: hypertension, controlled; diverticulosis; obesity; colon/rectal polyps; gastritis; interstitial cystitis; kidney stone; hypercholesterolemia; long term bilateral hearing loss; lumbar spine degenerative joint disease; chronic shortness of breath; inflammatory osteoarthritis; dyspepsia; sinusitis; tension headaches; GERD; chronic pain syndrome; peripheral neuropathy; anemia; Hepatitis A+; nasal polyps; bradycardia; probable fibromyalgia; obstructive sleep apnea/insomnia; myofascial pain; and liver lesions. (Tr. 105, 112, 129, 130, 153, 154, 179-182, 227, 284, 307, 312, 313, 317, 320, 323, 326-332, 339, 340, 344, 392, 396, 401, 410-413, 415, 417, 422, 426-429, 440, 441). Also, lumbosacral x-rays performed in December 2002, confirmed "narrowing of the L4-L5 intervertebral disc space" with "small osteophytes off the L3, L4, and L5 vertebral bodies . . . ." (Tr. 420). Due to his measurable hearing loss, Mr. Cannon

8

was fitted with hearing aids in April 2002. (Tr. 388). Notably, in December 2002, the VAMC rheumatologist recorded:

> . . . He has borderline HCT and his platelets today are slightly high. X-rays reveal slight spurring of vertebra c/w mild OA, ? Slight narrowing of bilateral hip joints (medially). . . This is most likely fibromyalgia and mild OA . . . Sleep apnea can make fibromyalgia worse . . . Significant anxiety or depression can also make fibromyalgia worse. Psychiatric meds need to be optimized if indicated. . . . .

(Tr. 353).

Mr. Cannon described his complaints of "intermittent numbness/tingling sensation in distal extremities," and generalized pain complaints as located in his knees, ankles, shoulders, lower legs, suprapubic area, occipital frontal or temple area of head, arms, chest, hips, lower back, and hands. (Tr. 137, 138, 146, 147, 156, 229, 307, 310, 311, 315, 325, 329, 332, 334, 335, 343, 347, 397, 398, 439, 441). It was noted that Mr. Cannon's pain levels increased considerably with activity and at night, escalating to a score of "10" at times. (Tr. 315, 325, 335, 347).

The numerous medications prescribed for Mr. Cannon by various VAMC physicians included the following: Trazodone, Paxil, Tylenol #3, Rabeprazole, Tagament, Wellbutrin, Buprorion, Levofloxin, Phenazopyridine HCL, Atenolol, Felodopine, Cimetidine, Propoxphene, Serzone, Remeron, Clonazepam, Mirtazapine, Gastrografin, Neurontin, Toradol, Nasalide, Venlafaxine, Zocor, CPAP/Bipap Unit, Gabapentin, Salsalate, Oxybutynin Chloride, and Nefazadone. (Tr. 107, 108, 111, 128, 132, 148-150, 183, 184, 187-191, 307, 308, 316, 319, 323, 327, 330, 332, 336, 342, 351-353, 364, 365, 385- 387, 391, 396, 401, 403, 423, 430-436). Mr. Cannon reported side effects from Trazodone as making him feel "oversedated and lethargic;" sexual dysfunction from Paxil and Venlafaxine; sluggishness from Mirtazapine; and drowsiness

from Neurontin. (Tr. 149, 320, 323, 327, 401, 402). In December 2002, it was noted that he had a history of "compliance [with] medications and appointments," complained of "diffuse pain and other fibromyalgic [symptoms]," and has a history of exposure to numerous environmental toxins, including asbestos, radiation, lead, . . . ." (Tr. 354).

**Other Evidence**: The record shows that the VA granted Mr. Cannon pension benefits in May 2003, in the amount of $61.00 per month, but found he was incompetent to handle even these small amount of funds. (Tr. 90-102). A rating decision dated February 25, 2003, indicated that a "definitive finding of incompetency" had been made by "a physician in this case, and the claimant is not shown to be able to manage personal affairs to include disbursement of funds . . . ."(Tr. 94, 95, *See also*, Tr. 444).

**Consultative Examinations**: Mr. Cannon underwent a consultative physical examination on October 19, 2002, with Gavin Chico, M.D. and a psychiatric evaluation on November 13, 2002, with John Harris, M.D. (Tr. 194-202). In his report, Dr. Chico recorded Mr. Cannon's symptoms as pain in all body joints, as well as in his chest, shoulder, back, legs, ankles, and knees. (Tr. 194). Mr. Cannon reported that he has low back pain that is worsened with bending or stooping, and relieved somewhat with pain pills and relaxing. (Tr. 194). He also reported "he feels sad and like his life is going to pieces;" that he has decreased concentration and forgets easily; and that he sleeps for two hours at a time at night, with no sleep about four times a week. *Id.* His medications were listed as Trazodone, Serzone, Wellbutrin, Darvocet, Gemfibrozil, Plendil, Atenolol, and Tylenol. (Tr. 1950). Dr. Chico opined that "[o]verall ability of the patient to sit, stand, walk, lift, hear and speak and handle objects appears grossly normal without any limitations noted during this examination." (Tr. 196). However, he

10

observed that Mr. Cannon's affect was "flat." *Id.*

Dr. Harris recorded Mr. Cannon's numerous neuro-vegetative symptoms and observed that his psychomotor activity was slow; his mood was moderately depressed; and that his affect was moderately low in range and intensity. (Tr. 199). Further mental status examination revealed that Mr. Cannon could not recall any U.S. presidents other than president Bush; that he performed only one correct serial subtraction by "7"s, backwards from 100; and his intelligence was estimated as average. (Tr. 200). Dr. Harris indicated that Mr. Cannon's social functioning, in all areas, was "fair;" that his concentration, persistence, and pace were "moderately impaired . . . secondary to neurovegetative signs and symptoms of depression;" and that deterioration and decompensation "[i]n the past year have been moderate." (Tr. 200, 201). His diagnosis was Moderate Dysthymia with a GAF of 50/55. (Tr. 201). Dr. Harris explained his prognosis as:

> Based on current treatment is fair from a psychiatric perspective with poor prognostic indicators including the patient's poor medication response and overall difficulty in adjustments for the past 5 years. Overall prognosis is guarded considering the degree to which the patient's medical conditions contribute to the patient's overall level of disability . . . .

*Id.*

Mr. Cannon correctly argues that due to Mr. Cannon's age,[2] coupled with the ALJ's finding that he does not have transferable skills, the Commissioner's regulations direct a finding of disability even if he can perform the full range of sedentary or light work. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.06, 202.06. Thus, according to Mr. Cannon, the ALJ's repeated focus on whether he is precluded from performing "all work activities" is misplaced. (Tr. 17,

---

[2] Mr. Cannon was born on March 18, 1944 and was 58 years old when he filed his application for benefits, and was within three months of turning age 60 when the ALJ rendered his January 27, 2004 decision. (Tr. 49, 446).

11

18).

However, the Commissioner argues that the ALJ found that Mr. Cannon's residual capacity was at a medium rather than a light or sedentary level, finding that: (1) Mr. Cannon can perform medium work, which entails lifting 25 pounds frequently and 50 pounds occasionally and standing and walking 6 hours a day,[3] and (2) has *no* restriction of daily activities. (Tr. 17, 18). Under Rule 203.15, Mr. Cannon would not be disabled if his residual capacity is for medium work. Thus, the correctness of the ALJ's decision turns on whether Mr. Cannon's residual capacity was at a medium level or at a light or sedentary one.

2. Updated Medical Opinion

Mr. Cannon argues that the ALJ erred as a matter of law in not calling a medical advisor to the hearing given the new medical evidence added to the record since a State agency medical consultant had reviewed the psychological aspects of his case on December 6, 2002. (Tr. 203-216). Specifically, 224 pages of updated Department of Veterans Affairs records were added to the record. (Tr. 222-444). As noted by the Fifth Circuit, "[a]n ALJ is "not at liberty to make a medical judgment regarding the ability or disability of a claimant to engage in gainful activity, where such inference is not warranted by clinical findings." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). Cannon argues that the ALJ erred in not obtaining a medical advisor to evaluate the updated records. *See* SSR 96-6p, *found at* 1996 WL 374180 (S.S.A. 1996).

In response, the Commissioner argues that the evidence in the case at bar is not of the nature of that found in *Loza*. Rather, the ALJ was able to grant "significant" weight to all of

---

[3]*See* SSR 83-10, *found at* 1983 WL 31251 (S.S.A. 1983).

findings of the treating physicians of record, as well as the consultative examiners' opinions (Tr. 18). According to the Commissioner, the only physician whose opinion did not warrant great weight was that of Dr. Harbour, whose opinion was inconsistent with the other evidence of record and was based on an uncritical acceptance of Plaintiff's subjective complaints (Tr. 455).

According to SSR 96-6p, the ALJ must obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any impairment in the Listing of Impairments. SSR 96-6p further provides that when an updated medical judgment as to medical equivalence is required at the ALJ level under these circumstances, the ALJ must call on the services of its medical support staff.

In this case, the record shows that in the same month that the State agency reviewed this case, the more recent VA records document that Mr. Cannon's mental state was so severe that the medical personnel considered having him involuntarily committed for depression, his GAF was assessed at 31, which is indicative of a "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . )."[4] Additionally, Mr. Cannon was found not competent to manage his financial affairs in his own best interest. (Tr. 354, 356, 358, 359 442-444, *See also* Tr. 94, 95). This evidence directly conflicts with the findings of the State agency psychologists and with the ALJ's own findings that Mr. Cannon has "no restriction" of daily activities; "mild difficulties" in maintaining social functioning; and "moderate difficulties" in

---

[4]*See The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision,* (DSM - IV - TR), 34 (4th ed.2000).

13

maintaining concentration, persistence, or pace. (Tr. 17).

Given these findings, the undersigned agrees that the ALJ should have called a medical expert to the hearing, to review the updated medical records, rather than reviewing and evaluating the records himself. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Since no State agency medical consultant ever reviewed the case to address medical equivalency after the new records were added to the case, SSR 96-6p required the ALJ to obtain such an opinion from a medical expert.

The regulations provide that the "extent to which an acceptable medical source is familiar with the other information in your case record" is a relevant factor that is considered in deciding the weight to give to a medical opinion. *See* 20 C.F.R. § 404.1527(d)(6). In this case, the ALJ erred in relying on the opinion of the State agency medical consultants without calling a medical advisor to the hearing, but instead interpreting the updated VA medical records himself. Therefore, the undersigned recommends that this matter be REVERSED and REMANDED for further proceedings on this basis.

3. Consideration of VA finding of disability

The record also indicates that the VA granted Mr. Cannon pension benefits in May 2003, in the amount of $61.00 per month, but found he was incompetent to handle even these small amount of funds. (Tr. 90-102). A rating decision dated February 25, 2003, stated that a "definitive finding of incompetency" had been made by "a physician in this case, and the claimant is not shown to be able to manage personal affairs to include disbursement of funds . . . ."(Tr. 94, 95, *See also*, Tr. 444).

The Commissioner argues that the record contains no evidence that the VA found Cannon

to be totally and permanently disabled, pointing out that there is no VA disability rating in the record, but only a finding by the VA that Plaintiff was incompetent to manage the small sum of his VA pension (Tr. 94-96). The Commissioner argues that this finding did not prove that Plaintiff was disabled under the VA's regular "schedular requirements," much less the considerably higher standard of disability of the Social Security Act.

In response, Mr. Cannon points out that the record contains the VA finding of incompetency, which specifically references the fact that the VA "granted disability pension benefits effective September 6, 2002." (Tr. 91), and that under the laws pertaining to VA benefits, the Veteran's Administration necessarily found that Cannon was permanently and totally disabled. To qualify for a non-service-connected pension, such as the one received by Mr. Cannon, the veteran must be permanently and totally disabled from non-service connected disabilities, or from a combination of service-connected and non-service-connected disabilities. *See* 38 U.S.C. § 1521.

The undersigned agrees that the while the ALJ was not bound by the VA determination, he was required to consider it, along with the other evidence of record and, if he rejected the determination, to provide a reason for its rejection. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); 20 C.F.R. § 404.1504; *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

In *Latham*, the Fifth Circuit remanded a case to consider new evidence of a VA rating that the appellant was eligible for VA disability benefits, finding that there was a reasonable possibility that the VA rating would have changed the determination, stating:

> The ALJ based the decision to deny benefits partly on the fact that none of Latham's physicians had pronounced him disabled. The VA rating specifically makes a disabled finding and, like a physician's finding, constitutes evidence 'entitled to great weight.' *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981).

15

*Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

Because the record fails to show that the ALJ considered the VA disability finding in this case, it is recommended that the case be REVERSED and REMANDED for further proceedings on this basis as well.

4. Appeals Council Error

Finally, Mr. Cannon complains that the Appeals Council committed reversible error in failing to find that the new evidence from Dr. Harbour, Mr. Cannon's treating physician at the VA Clinic, provided a basis for changing the ALJ's decision.

Mr. Cannon submitted new evidence to the Appeals Council which included progress notes and a medical assessment from Dr. Harbour, a Staff Physician at the VA Medical Center. (Tr. 455-460). A review of those records shows that the records relate to visits made after the relevant time period for this appeal, and concern the time period for which disability benefits have now been awarded. Therefore, the records do not provide a basis for reversal or remand.

**Conclusion**

**For the reasons stated above, it is recommended that the Commissioner's decision to deny benefits be REVERSED, and this matter REMANDED for further proceedings.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 8th day of November, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE